John Heenan
Colin Gerstner
BISHOP, HEENAN & DAVIES
1631 Zimmerman Trail
Billings, Montana 59102
Telephone: (406) 839-9091
jheenan@bhdlawyers.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| CHRISTIE KAUTSKY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MY PILLOW, INC.,<br><br>Defendant. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW Plaintiff and for her complaint respectfully show the Court as follows:

### TYPE OF ACTION

1. This is a putative class action brought pursuant to the Montana Consumer Protection Act (Montana CPA), 30-14-101 et seq. MCA. Plaintiff brings this action for herself individually and for all persons similarly situated.

1

## JURISDICTION AND VENUE

2. This court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties reside in different states and the amount in controversy exceeds $5,000,000.

3. Venue is proper in this division of the District of Montana since the actions giving rise to the causes of action of the named Plaintiff occurred in Yellowstone County, Montana, and Plaintiff resides in Yellowstone County.

## PARTIES

4. Plaintiff is a natural person who resides in Yellowstone County, Montana. Members of the proposed class are Montana consumers who purchased a My Pillow, Inc. pillow under a buy one, get one free ("BOGO") offer.

5. Defendant My Pillow, Inc. is a Minnesota limited liability company transacting business and selling products in the State of Montana.

## FACTUAL ALLEGATIONS

6. This is a proposed class action. Plaintiffs, on behalf of themselves and all similarly situated persons currently seek declaratory and injunctive relief based on Defendant's acts and omissions. This includes relief for a Montana class based on violations of the Montana CPA.

7. These claims relate to two nationwide advertising campaigns by My Pillow, Inc. Both campaigns involved a business practice commonly referred to as

"false reference pricing." False reference pricing is the act of misrepresenting the regular price of a good that is purportedly offered at a "sale price" or as part of a buy one get one free offer.

8. In one campaign, My Pillow, Inc. offered a pillow for sale, and claimed to include a "free" pillow as part of the purchase. This is commonly known as, and is referred to by My Pillow as a "buy one get one free" or "BOGO" promotion. My Pillow, Inc.'s BOGO promotions were made in television advertisements seen throughout the United States, on the MyPillow.com website, on the internet website YouTube, and on other media, all of which were and are accessible throughout the United States, including Montana.

9. The My Pillow, Inc. BOGO Promotions were false and deceptive because My Pillow, Inc. did not provide one pillow "free." Instead, it inflated the regular price of the pillow being purchased as part of the promotion, resulting in the buyer purchasing two pillows at or near the combined regular price for two pillows. Stated alternatively, the pillow that was being sold as part of the BOGO promotion could be purchased for a substantially lower price without inclusion of the "free" pillow. Defendant attempted to mislead purchasers into buying two pillows instead of one under the guise that one of the two pillows was free, when it was not.

10. In another similar and related advertising campaign also involving false

3

reference pricing, My Pillow, Inc. offered a pillow for sale, and claimed to provide a 50% discount off its regular price. My Pillow, Inc.'s 50% Off offers were made in television advertisements seen throughout the United States, on the MyPillow.com website, on the internet website YouTube, and on other media, all of which were and are accessible throughout the United States, including Montana (hereinafter "50% Off Promotion").

11. The My Pillow, Inc. 50% Off Promotions were false and deceptive because My Pillow, Inc. was not providing a pillow for 50% off the regular price of the pillow. Instead, it inflated the price of the pillow to approximately twice the regular price, then offered an illusory 50% discount.

12. At various times during the class period, MyPillow, through its televised advertisements, web pages, and other media (collectively, "advertisements"), presented a BOGO Promotion related to its pillows.

13. MyPillow began its BOGO Promotion advertisement campaign in 2014 based in substantial part on extended televised advertisements ("infomercials").

14. MyPillow's infomercials encouraged viewers to call in to a toll free number to place an order with an operator, or visit Defendant's website, www.mypillow.com to order its pillows.

15. On information and belief, MyPillow's infomercials were and are running a combined average of approximately 175 to 200 times per day on local and national networks, radio, and television channels.

16. The MyPillow BOGO Promotion was heavily advertised on various television stations, including Fox News. In order to receive a "free" pillow under the BOGO Promotion, the advertisements provided a promotion code.

17. The pillows could be purchased under the BOGO Promotion either by calling into the number provided in the advertisements and ordering though an operator, or purchased online through the www.MyPillow.com website.

18. The advertisements stated "call or go online now to order MyPillow and Mike will give you a second pillow absolutely free. Use the promo code on your screen to get two MyPillows for the price of one."

19. To participate in the BOGO Promotion, Class Members, including Plaintiff, listened to the advertisements, and either ordered online, or phoned in and ordered through an operator.

20. Unbeknownst to Plaintiff and Class Members, they were not getting two pillows "for the price of one." Instead, MyPillow was inflating the regular price of the first pillow to approximately or exactly twice its regular price, thereby passing on the cost of the "free" pillow to the consumer.

5

21. For example, those obtaining two Standard / Queen Premium pillows as part of the BOGO Promotion paid $99.97 plus shipping. One Standard / Queen Premium pillow from MyPillow, however, could be purchased from the MyPillow website for a regular price of $49.99 plus shipping with a readily available "promo code," and from MyPillow on Amazon.com for $59.95 with free shipping without the use of a "promo code."

22. At various times during the class period, MyPillow, through its televised advertisements, web pages, and other media (collectively, "advertisements"), presented a "50% Off" offer related to its pillows.

23. The 50% Off Promotion was similar to the BOGO Promotion in that both were widely advertised by MyPillow, the misconduct in both was based on false reference pricing, both used readily available "promotional codes", and with both - contrary to the offer being promoted by MyPillow - consumers were essentially purchasing a MyPillow at its regular price while being told they were getting a significant price reduction or a no cost item.

24. MyPillow began its 50% Off Promotion advertising campaign in approximately 2011 based in substantial part on extended televised advertisements ("infomercials"). MyPillow's infomercials encouraged viewers to call in to a toll free number to place an order with an operator, or visit Defendant's website, www.mypillow.com to order its pillows.

6

25. The MyPillow 50% Off Promotion was heavily advertised on various television stations, including Fox News. In order to receive a pillow under the 50% Off Promotion, the advertisements provided a promotion code. Various alphanumeric promotion codes applied.

26. The My Pillow promotion codes for the 50% Off Promotion are readily and freely available at no cost to the general public on the MyPillow website, in its commercials, and at various third party websites on the internet.

27. The pillows could be purchased under the 50% Off Promotion either by calling into the number provided in the advertisements and ordering though an operator, or purchased online through the www.MyPillow.com website.

28. To participate in the 50% Off Promotion, Class Members listened to the advertisements, and either ordered online, or called in and ordered through an operator.

29. Unbeknownst to Class Members, they were not getting pillows for 50% off the regular price. Instead, MyPillow was inflating the regular price of the first pillow to approximately or exactly twice its regular price, then offering "50% Off" of the inflated price to the consumer, resulting in a final price that was at or near the regular price of the pillow.

30. For example, those obtaining a Queen Sized Premium pillow as part of the 50% Off Promotion were told that one Premium Queen Sized Premium pillow

was priced at $99.97, and that by applying the 50% off code, they received the pillow at half of its regular price. One Queen Sized Premium pillow from MyPillow, however, could be purchased from the MyPillow website for a regular price of $49.99 with a readily available "promo code," and from MyPillow on Amazon.com without a "promo code" for $59.95. When a Queen Sized Premium pillow was obtained as part of the 50% Off Promotion, the 50% Off claim was illusory and misleading.

31. MyPillow's advertisements regarding the 50% Off Promotion have been consistent throughout the class period.

32. Plaintiff, within the class period, saw the MyPillow advertisement on television, listened, understood and relied on the representation that if she purchased one premium pillow, then she would get another premium pillow "for free."

33. Based on this information, Plaintiff paid a total of $119.92 to purchase one premium pillow and to get one premium pillow "for free." Her order, numbered 102162273, was placed on October 27, 2016.

34. Based on Defendant's representations made as part of the advertisement, she believed the true and regular price of the pillows was $99.97 each and that she was receiving one pillows free of charge. In reality, MyPillow was inflating the regular price of the first pillow to approximately or exactly twice its regular price, then offering "BOGO" of the inflated price to Plaintiff, resulting in a final price that

was at or near the regular price of the pillow. Thus, the "free" pillow was not actually free. The transaction was instead a disguised purchase of two pillows.

## CLASS ALLEGATIONS

35. Plaintiff brings this action for herself and on behalf of all similarly situated Montanans who participated in the BOGO Promotion and 50% off Promotion.

36. The Class of persons Plaintiff seeks to represent are defined as all persons who, at any time during the applicable class period, were Montana residents and purchased a pillow from Defendant as part of a buy one, get one free promotion or a 50% off promotion.

37. The legal claims of the proposed class are identical to those of Plaintiff. Because the claims of each member of the class arise from the purchase of a MyPillow under the deceptive BOGO promotion and 50% off promotion, the identical legal claims legal are present for Plaintiff and each member of the proposed class. There are question of law and fact that are common to the named Plaintiff and those of the proposed class.

38. The legal claims predominate over any minor factual differences between the Plaintiff or class members, if any.

39. The class members are consumers who may be unable to locate or afford counsel. Most are probably unaware that their legal rights have been violated. The amount of damages per consumer, while not insignificant, are generally small and thus a consumer class action is particularly well suited to address violations and for recovery by the class.

40. The named Plaintiff will adequately and fairly represent the interests of the class.

41. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## MONTANA CPA VIOLATION

42. Plaintiff incorporates the above facts.

43. Defendant violated the Montana CPA because its conduct: (a) constituted a false or misleading representation of fact concerning the reasons for, existence of, or amount of price reduction; (b) constituted a false or misleading statement about a promotion used to publicize a product; (c) constituted a false or misleading representation of fact concerning the offering price of or the person's cost for goods; and/or (d) constituted unfair or deceptive acts or practices in the conduct of its trade or commerce.

44. Plaintiff and the class suffered an ascertainable loss when they were charged and paid for a second pillow under Defendant's BOGO and/or 50% off promotions.

45. Plaintiff and each classmember are entitled to recover $500.00 for Defendant's violation(s) of the Montana CPA.

46. Plaintiffs are entitled to their reasonable attorney's fees and costs under the Montana CPA.

WHEREFORE, Plaintiff prays for relief as follows:

1. This Court certify the class and appoint Plaintiff as Class representatives and their counsel as class counsel;

2. Each Plaintiff and each member of the class be awarded $500;

3. Plaintiff and the Class's costs and attorney fees;

4. Entry of a declaratory judgment;

5. Enjoin Defendant from continuing its unfair or deceptive business conduct as described herein.

6. Such other relief as this Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims.

Dated this _11_ day of January, 2017.

By: /s/ John Heenan
John Heenan
BISHOP, HEENAN & DAVIES
1631 Zimmerman Trail
Billing, Montana 59102

Attorneys for Plaintiff